Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,636-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

THANG NGUYEN                                          Plaintiff-Appellee

versus

CHRIS ATKINS AND ATKINS                    Defendants-Appellants
CONTRACTING LLC

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 171,377

Honorable Alexandra Aiello Stahl, Judge

* * * * *

MARK WATKINS ODOM                        Counsel for
                                                              Defendants-Appellants


WIENER, WEISS & MADISON, APC        Counsel for
By: Roger Joseph Naus                             Plaintiff-Appellee

GILSOUL & ARONSON, LLC
By: Lee Brian Aronson



* * * * *

Before THOMPSON, ROBINSON, and HUNTER, JJ.

**HUNTER, J.**

Defendants, Chris Atkins and Atkins Contracting LLC, appeal a district court judgment granting, in part, a motion for summary judgment filed by plaintiff, Thang Nguyen, and awarding damages in the amount of $147,360.94. For the following reasons, we affirm the judgment as it relates to Atkins Contracting LLC, and we reverse the judgment insofar it finds Chris Atkins personally liable.

## FACTS

On August 2, 2022, plaintiff, Thang Nguyen, contracted with defendants to perform repairs on his residence in Shreveport, Louisiana. The agreement provided that the project would be completed in two phases. Pursuant to the contract, plaintiff paid defendant $37,412.50 on August 2, 2022, to begin the project and an additional $7,482.50 on May 25, 2023, to complete the first phase of the project. According to plaintiff, defendant completed some, but not all, of the work required by the first phase. Nonetheless, on September 5, 2023, plaintiff paid defendant an additional $35,462.50 to begin the second phase of the project.

After receiving the payment to begin Phase 2, defendant stopped working and failed to return plaintiff's telephone calls. Thereafter, on October 9, 2023, plaintiff sent a demand letter, demanding that defendants "return the $35,462.56, plus 20% of the phase one payment, *i.e.*, $15,000" within "the next 15 days." Defendants did not return the funds, nor did they pay the subcontractors they hired to assist in the job.

On October 26, 2023, plaintiff filed a lawsuit alleging, *inter alia*, that prior to entering into the agreement, defendant, Chris Atkins, represented that Atkins Contracting, LLC was licensed to complete the work. However,

plaintiff later learned that the company was "only registered to perform home improvement work," which only allowed it to take projects valued at less than $75,000, and the company's registration had expired before it was paid the initial payment. Plaintiff also alleged that not only did defendant fail to complete the job pursuant to the contract, but much of the completed work was "faulty." Plaintiff requested damages for breach of contract in the amount equal to what he paid to complete the work. Plaintiff also requested compensatory damages under the Louisiana Unfair Trade Practices Act ("LUTPA") based on defendant's failure to possess the requisite contractor license to entitle the company to perform the work it contracted to complete.

On September 23, 2024, plaintiff filed a motion for summary judgment, arguing there were no genuine issues of material fact in dispute, and he was entitled to summary judgment as a matter of law. Plaintiff also argued he was entitled to damages in the amount of $486,387.60, plus court costs and attorney fees. Defendants did not file an objection or opposition to summary judgment or appear at the hearing on the motion.

Following a hearing, the district court denied the motion as to the LUTPA claims, finding genuine issues of material fact remain in dispute regarding those claims. However, the court granted, in part, the motion for summary judgment as to the breach of contract claim. The court stated as follows:

> I do agree that, um, there was a contract between the plaintiff and the defendants in this matter and that the contract was in fact breached by Mr. Atkins um, by failing to complete the job[.] [In] his interrogatory response, he admitted that he did stop work, um, he stopped work on several occasions, but ultimately the work I think he stopped completely in September of 2023[.] [A]nd while I'm sympathetic to all those reasons, I mean he did ultimately choose to stop working, did not complete the job as he had contracted to do and further there

2

was no dispute um, or there's not been any opposition filed um, on his behalf[.]

The court awarded damages in the amount of $147,360.94, for "the costs to complete the job," in addition to court costs. The judgment was later designated a final judgment.

Subsequently, on February 26, 2025, the district court held a "form and content" hearing, wherein counsel for defendants appeared and objected to the form of the judgment. Counsel argued that the judgment should not have included Chris Atkins in his individual capacity. Counsel acknowledged that Chris Atkins was the sole member of the limited liability company, Atkins Contracting, LLC. However, he asserted plaintiff failed to prove the elements required to pierce the corporate veil. The district overruled the objection, reiterating that the motion for summary judgment had been granted "as to both defendants[.]"

Defendants appeal.

## DISCUSSION

Defendants contend the district court erred in granting, in part, plaintiff's motion for summary judgment. Defendants maintain the failure to file an opposition to the motion for summary judgment is not dispositive. A motion for summary judgment, even if unopposed, requires a determination that there are no genuine issues of material fact and the mover is entitled to judgment as a matter of law.

More specifically, defendants argue summary judgment was improper based on breach of contract because the written agreement between the

3

parties was not a valid contract.[1]  Defendants assert that the purported

contract was invalid because defendants did not possess the proper

contracting license to enter such a contract, and plaintiff was aware of that

fact because plaintiff obtained the building permit in his own name because

defendants did not possess the appropriate contractor's license required to

obtain the permit.  Thus, according to defendants, the motion should have

been denied because, as a matter of law, a contract for work entered into by

an unlicensed contractor is null and void under the contractor licensing law.

Appellate courts review motions for summary judgment *de novo*,

using the same criteria that govern the district court's consideration of

whether summary judgment is appropriate.  *Peironnet v. Matador Res. Co.*,

12-2292 (La. 6/28/13), 144 So. 3d 791; *Bess v. Graphic Packaging Int'l,*

*Inc.*, 54,111 (La. App. 2 Cir. 11/17/21), 331 So. 3d 490; *Shields v. McInnis*

*Bros. Constr., Inc.*, 53,581 (La. App. 2 Cir. 3/3/21), 314 So. 3d 1079.

A motion for summary judgment is a procedural device used when there is

no genuine issue of material fact for all or part of the relief prayed for by a

litigant. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002; *Bess*,

*supra*.  The procedure is favored and shall be construed to secure the just,

speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion,

memorandum, and supporting documents show that there is no genuine issue

as to material fact and that the mover is entitled to judgment as a matter of

law. La. C.C.P. art. 966(A)(3).  A fact is material if it potentially ensures or

---

[1] As mentioned above, defendant did not file an opposition to the motion for summary judgment and did not appear at the hearing on the motion.  Therefore, all arguments are made for the first time on appeal.

4

precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874; *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Bess*, *supra*. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Bess*, *supra*; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230; *Marioneaux v. Marioneaux*, 52,212 (La. App. 2 Cir. 8/15/18), 254 So. 3d 13.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); *Bess*, *supra*; *Doerle Food Servs., L.L.C. v. River Valley Foods, L.L.C.*, 52,601 (La. App. 2 Cir. 5/22/19), 273 So. 3d 656, *writ denied*, 19-01188 (La. 10/15/19), 280 So. 3d 602; *Collins v. Hill*, 52,457 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1202.

A contract is formed by consent of the parties established through offer and acceptance, which may be made orally, in writing, or by action or inaction that under the circumstances indicates consent. La. C.C. art. 1927. Under Louisiana law, formation of a valid and enforceable contract requires capacity, consent, a certain object, and a lawful cause. The court must find there was a meeting of the minds of the parties to constitute the requirement of consent. *McDonald v. Orr Motors of Little Rock, Inc.*, 52,225 (La. App. 2 Cir. 9/26/18), 256 So. 3d 1132; *Crowe v. Homesplus Manufactured Housing, Inc.*, 38,382 (La. App. 2 Cir. 6/21/04), 877 So. 2d 156.

Under Louisiana law, contracts are interpreted according to the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear, explicit, and lead to no absurd consequences, no further interpretation need be made in search of the parties' intent. La. C.C. art. 2046. Interpretation of a contract within the instrument's four corners is a matter of law, and the use of extrinsic evidence is proper only if a contract is ambiguous after an examination of the four corners of the agreement. *City of Ruston v. Womack & Sons Constr. Grp., Inc.*, 55,328 (La. App. 2 Cir. 11/15/23), 374 So. 3d 311, *writ denied*, 24-00086 (La. 3/5/24), 380 So. 3d 571; *Frierson v. Stephens, Inc.*, 55,115 (La. App. 2 Cir. 8/9/23), 369 So. 3d 934.

The courts are bound to enforce the contract as written. *Coleman v. Jim Walter Homes, Inc.*, 08-1221 (La. 3/17/09), 6 So. 3d 179; *Highland Clinic v. Dhawan*, 55,240 (La. App. 2 Cir. 9/27/23), 372 So. 3d 390; *Best v. Griffin*, 50,445 (La. App. 2 Cir. 2/24/16), 190 So. 3d 333. In an action for breach of contract, as in all civil matters, the burden of proof is upon the plaintiff to establish by a preponderance the elements essential to recovery.

*Id.* The essential elements of a breach of contract claim are (1) the obligor undertook an obligation to perform, (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in damages to the obligee. *Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC*, 14-2592 (La. 12/8/15), 193 So. 3d 1110; *Highland Clinic v. Dhawan, supra.*

In support of the motion for summary judgment, plaintiff attached the complete written "Contractor's Agreement" between the parties. In accordance with the provisions of La. R.S. 37:2159, the agreement included the full name and address of the contractor, the contractor's purported license number, a description of the work to be performed, the total amount agreed to be paid for the work to be performed under the contract, an approximation of the cost expected to be borne by the owner, and the signatures of the parties. Additionally, the contract specified that the project would be completed in two phases, and it outlined the work to be completed in each phase, as well as the costs associated therewith. The contract also provided as follows:

> 1. All work shall be completed in a workmanlike manner and in accordance with all building codes.
>
> 2. Contractor may engage subcontractors to perform work hereunder, provided Contractor shall fully pay said subcontractor and in all instances remain responsible for the proper completion of this Contract.
> ***

In his affidavit, plaintiff attested, "After Chris Atkins and Atkins Contracting, LLC abandoned the job I hired them to do *** I personally went about getting estimates to finish the job I had hired the defendants to

7

perform." Moreover, plaintiff submitted documents establishing defendants failed to complete the job and failed to pay the subcontractors they hired.

Through the documents supporting his motion for summary judgment, plaintiff proved that there is no genuine issue as to material fact regarding any of the elements of breach of contract. Defendants did not attempt to produce factual support sufficient to establish the existence of a genuine issue as to material fact or that plaintiff was not entitled to judgment as a matter of law. They failed to file an opposition to the motion for summary judgment or to provide an argument against it at the hearing on the motion.

On appeal, defendants did not refute plaintiff's allegations regarding breach of contract. Rather, defendants argue the contract was invalid because they (defendants) did not have the requisite license to enter into the contract. Defendants cite *United State Equip., Inc. v. Charles Carter & Co., Inc.*, 342 So. 2d 1153 (La. App. 1 Cir. 1977), *Hagberg v. John Bailey Contr.*, 435 So. 2d 580 (La. App. 3 Cir. 1983), *writ denied*, 444 So. 2d 1245 (La. 1984), and *Alonzo v. Chifici*, 526 So. 2d 237 (La. App. 5 Cir. 4/18/88), *writ denied*, 527 So. 2d 307 (La. 1988), to support their claim that the contract is invalid, and therefore, they cannot be sued for breach of contract.[2]

Our review of the cases cited by defendants reveal the cases involve unlicensed contractors who were prohibited from either enforcing or

_____

[2] The underlying basis for defendants' argument is set forth in La. R.S. 37:2159(D), which provides:

> No contractor who fails to obtain a license as provided for in this Chapter shall be entitled to file a statement of claim or a statement of lien or privilege with respect to monetary sums allegedly owed under any contract, whether express, implied, or otherwise, when any provision of this Chapter requires that the contractor possess a license in order to have properly entered into such a contract.

recovering damages on a contract based on their lack of licensure. The purpose of licensing requirements is to protect the public from "incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract." La. R.S. 37:2150. Defendants do not fall within the intended scope of protection under the licensing statutes.

In the instant case, defendants drafted and entered the "Contractor's Agreement" to perform extensive home repairs, knowing they did not have the proper licensing. After performing poor workmanship and failing to complete the renovations, defendants now seek to invalidate the contract and escape liability by taking advantage of the fact that they did not have the proper license when they entered into the contract. The language of the contract in this case is clear: defendants agreed to perform the repairs/renovations "in a workmanlike manner." Defendants admittedly breached the agreement by failing to do so. In the answers to interrogatories, Atkins asserted a myriad of reasons for failing to complete the project, including (1) his work trailer, all of his tools, and "a lot of materials for the project" were stolen from the job site, which forced an "abrupt halt on the work"; (2) his grandmother was in hospice, and he was providing care for her; (3) he was unable to locate subcontractors willing to complete the project; (4) his wife left him "due to financial issues stemming from this project"; (5) "material and labor costs escalated far above what was anticipated"; and (6) his employees "had quit" and he "could no longer mentally keep going."

Notwithstanding plaintiff's reasons for failing to complete the repairs and renovations, our *de novo* review determines that plaintiff met his burden of proof through his motion for summary judgment, memorandum, and

9

supporting documents to show that there are no genuine issues as to material fact regarding the breach of contract claims. Therefore, plaintiff is entitled to judgment as a matter of law.

Defendants also contend the method by which the district court calculated damages was incorrect. The court awarded damages for the "cost to complete the job"; however, in breach of contract claim, losses are measured by the costs caused by the breach. According to defendants, the cost of completing the job can only be awarded in the amount already paid to the contractor, and plaintiff was only entitled to receive the total, actual realized cost of the project, less the price of the contract.

If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract. La. C.C. art. 2769. An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance. La. C.C. art. 1994.

If the plaintiff in a breach of contract case meets the burden of proof, the remedy is to reduce the contract price in an amount necessary to complete the work or to correct the defective work according to the terms of the contract. *Storey v. Weaver*, 49,027 (La. App. 2 Cir. 5/14/14), 139 So. 3d 1079; *Mount Mariah Baptist Church v. Pannell's Associated Elec., Inc.,* 36,361 (La. App. 2 Cir. 12/20/02), 835 So. 2d 880, *writ denied*, 03-0555 (La. 5/2/03), 842 So. 2d 1101. However, a contractor may still recover part of the contract price, notwithstanding defects, when substantial performance is shown. *Storey v. Weaver, supra*; *Cascio v. Carpet,* 42,653 (La. App. 2 Cir.

10

10/24/07), 968 So. 2d 844. When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages. La. C.C. art. 1999.

In support of his motion for summary judgment, plaintiff submitted evidence indicating the contract price, the cost of completing the work, and the cost of the work necessary to correct the poor workmanship. Plaintiff submitted invoices and business records which established he spent $147,360.49 to complete the repairs/renovations to his house. The costs were associated with the foundation, plumbing, fencing, sheetrock, painting, electrical, HVAC, insulation, flooring, tile, cabinetry, countertops, appliances, doors, toilets, tubs, windows, and mirrors, which encompassed the contract herein. We find that the damages awarded were amply supported by the record, and the district court did not err in awarding damages in the amount of $147,360.94.[3]

Additionally, defendants contend the district court erred in casting Chris Atkins in judgment personally because plaintiff failed to satisfy the requirements for piercing the corporate veil. They argue the motion for summary judgment was granted only as to the breach of contract claims, the failure to pay subcontractors does not justify piercing the veil, and there is no justification for entering the judgment against Chris Atkins personally. Further, they argue the contract was signed by Chris Atkins as the agent for Atkins Contracting, LLC, and the prior license was issued to "Atkins Contracting, LLC," not to Chris Atkins personally. Thus, defendants

---

[3] If defendants are entitled to recover a portion of the contracted price, as argued, it would be incumbent upon them to prove they are entitled to recover a portion of the contracted price.

11

maintain there is no indication in the record that Chris Atkins assumed any personal liability under the purported contract.

La. R.S. 12:1320 provides:

A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.

B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.

C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.

D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

A limited liability company ("LLC") is an entity to which the law attributes personality and is, therefore, a juridical person. *See*, La. R.S. 12:1301. Therefore, as a general proposition, the law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons. *See*, La. C.C. art. 24; *Ogea v. Merritt*, 13-1085 (La. 12/10/13), 130 So. 3d 888. However, in narrowly defined circumstances, when individual member(s) of a juridical entity such as an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person, the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable. When

12

individual member(s) are held liable under such circumstances, it is said that the court is "piercing the corporate veil." *Ogea v. Merritt*, *supra*; *Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C.*, 11-2254 (La. App. 1 Cir. 7/10/12), 97 So. 3d 595.

In *Ogea v. Merritt*, *supra*, the plaintiff entered into a contract with "Merritt Construction, LLC" to construct a home. The sole member of the LLC signed the contract on behalf of the LLC and personally operated the equipment and supervised the contractor who poured a defective concrete foundation. The plaintiff filed a lawsuit against the LLC and the member in his individual capacity, and the member filed an exception of no cause of action. The trial court denied the exception and rendered judgment against the LLC and the member personally, *in solido*; the court of appeal affirmed the imposition of personal liability on the member. The Louisiana Supreme Court granted certiorari and reversed the judgment of personal liability against the member individually, stating:

\*\*\*

> [A] member's protection against personal liability is not unlimited. We further note that the statute is cast in terms of affording a cause of action to "any person [who] may *by law* have against a member." *See* La. R.S. 12:1320(D) (emphasis added). However, for purposes of the instant case, the cause of action afforded "by law" is restricted to these specifically enumerated areas of the law, which [the plaintiff] urges can subject [the defendant] to personal liability: any fraud, any breach of professional duty, or other negligent or wrongful act. *See* La. R.S. 12:1320(D).

\*\*\*

> [The plaintiff] suggests that [the member's] role as a contractor should be found to equate to a professional role and that his derogation from acceptable standards for contractors likewise should be found to equate to a "breach of professional duty" under La. R.S. 12:1320(D). However, [the plaintiff] again failed to offer proof at trial to justify her argument. From all that appears, it was the LLC that held a contractor's license, not [the member] individually.

13

> In the record, we find the contract between the LLC and [the plaintiff] purports to describe the contractor's licensing status. On the face of the contract, it is not [the member], but the LLC, which is described as holding a contractor's license. While this contract is not necessarily dispositive proof of licensure, [the plaintiff] introduced no competent evidence to show otherwise. *** On the record before us, we find [the plaintiff] did not establish that [the member] fit the definition of a "professional" under La. R.S. 12:1320(D), such that [the member] could be held personally liable.

*Id.*, at 897-899.

In *Nunez v. Pinnacle Homes, L.L.C.*, 15-0087 (La. 10/14/15), 180 So. 3d 285, the plaintiff entered into a contract for the construction of a home. After a dispute arose regarding the elevation of the home, the plaintiff filed a lawsuit against the LLC and its sole member/manager. The member of the LLC was an individually licensed contractor. Following a trial on the merits, the trial court found the LLC was liable for breach of contract, and the member/manager was personally liable for professional negligence under La. 12:1320(D); the court of appeal affirmed. Thereafter, the Supreme Court granted the defendants' writ application and remanded the matter to the court of appeal with instructions to consider the decision in *Ogea v. Merritt*, *supra*. The court of appeal affirmed the trial court's decision, finding the member/manager was personally liable for failing to correctly elevate the house. The Supreme Court reversed the ruling, noting that that the member/manager's failures constituted a breach of contract; however, it concluded, "[P]oor workmanship is not sufficient to hold [the member/manager] personally liable for these breaches, as they arise from the contract entered into with [the LLC]." *Id.*, at 293. The Court stated:

> [T]he record establishes [the member]'s failures to act fall within the context of his membership in the L.L.C. and were not undertaken in a personal capacity. Here, the plaintiff's

14

claim is one alleging poor workmanship arising out of a residential construction contract. As we noted in *Ogea*, 'To hold that poor workmanship alone suffice[s] to establish personal liability would allow the exception in [La. R.S.] 12:1320(D) to negate the general rule of limited liability in [La. R.S.] 12:1320(B).'

*Id.*, at 295.

In *Double-Eight Oil & Gas, L.L.C. v. Caruthers Producing Co.*, 44,199 (La. App. 2 Cir. 5/20/09), 13 So. 3d 754, *writ denied*, 09-1652 (La. 10/30/09), 21 So. 3d 291, the defendant corporate entity filed a reconventional demand, and the trial court granted a judgment in favor of the defendant/plaintiff-in-reconvention. After the plaintiff-in-reconvention was unable to collect the judgment from the LLC, it filed a motion/petition to collect from the individual members of the LLC. The members filed an exception of no right of action, arguing the plaintiff-in-reconvention did not allege a legally cognizable claim to pierce the veil of an LLC. The trial court denied the exception, and this Court reversed, granted the exception of no right of action, and dismissed the claim against the members of the LLC. This Court stated:

> La. R.S. 12:1320(B) states that no member is liable for a debt of the L.L.C. La. R.S. 12:1320(C) states that a member of an L.L.C. is not a proper party to a proceeding by or against an L.L.C.
>
> ***
>
> A limited liability company has the power as set forth in La. R.S. 12:1301, et seq. As such, it is a separate legal entity distinct from its member owners. La. R.S. 12:1301(10). A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company. La. R.S. 12:1320(C).

*Id.*, at 757-8.

15

Herein, the contract at issue was a "Master Contract" between "Atkins Contracting, License # 5****9." The record also contains a copy of a certificate issued to "Atkins Contracting LLC," by the State of Louisiana State Licensing Board for Contractors, on April 29, 2022. Additionally, in his petition for damages, plaintiff alleged, "Plaintiff hired Atkins Contracting LLC to do some home improvement work on a home[,] *** and Atkins Contracting LLC did not complete the job[.]" The sole specific allegation against Chris Atkins was that "Chris Atkins represented to plaintiff that Atkins Contracting LLC had a valid license to do the [job]."

Moreover, in his motion for summary judgment, plaintiff acknowledged that "LLC members are generally not liable for acts of an LLC." However, plaintiff argued "fraud is one of the exceptions allowing for piercing of the company veil," and the improper licensing is evidence of fraud. As noted herein, the district court denied the motion for summary judgment as to the fraud allegations and granted the motion solely as to the breach of contract claims.

Based on the above-cited statutory provisions and jurisprudence, we find that the duty to complete the job and to perform the work in a workmanlike manner arose from the contract formed between plaintiff and Atkins Contracting LLC, and the failures of Chris Atkins constitute a breach of contract. Poor workmanship is not sufficient to hold Chris Atkins personally liable for the breaches, as they arise from the contract entered into with Atkins Contracting, LLC. Consequently, we find the district court erred in finding Chris Atkins personally liable to plaintiff for damages.

**CONCLUSION**

16

For the reasons set forth herein, the summary judgment and award of damages in favor of plaintiff is reversed insofar as it finds Chris Atkins, the individual member of the LLC, personally liable.  The judgment is hereby rendered in favor of defendant, Chris Atkins, dismissing all claims against him in his individual capacity as a member of the LLC.  The judgment insofar as it grants summary judgment against Atkins Contracting LLC, and awards damages in the amount of $147,360.94, is hereby affirmed.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED.**

**THOMPSON, J., concurs in part and dissents part.**

I concur with the majority in affirming the trial court's judgment against the contractor's limited liability company, but dissent insofar as the majority reverses as to liability for the contractor individually. I would affirm the trial court's recognition that the homeowner was dealing primarily with the contractor in his individual capacity, and would not extend to the contractor, under these facts and circumstances, the valuable hedge of protection afforded by a properly operated separate juridical entity of his limited liability company. This court has addressed pertinent factors in piercing the corporate veil in *Gaddy v. Universal Cable Sys., Inc.*, 47,088 (La. App. 2 Cir. 9/7/12), 131 So. 3d 875. Here, I find it notable that the contractor argues that there was no contract because the limited liability company did not possess a valid contractor's license for a project of the size of that undertaken for the homeowner. Without a contract with the LLC, only the contractor in his individual capacity could be responsible for the damage. I also find merit to the argument of fraudulent action by an individual who undertakes these efforts, without license, and who treats the LLC as his alter ego, contracts with suppliers in his individual capacity, and causes damages, and then alleges the proper operation and distinct entity of the LLC as a shield as if he had not caused damage to this homeowner. For these reasons, I would affirm the trial court's judgment against the contractor in his individual capacity and respectfully dissent in part from the majority's opinion in that regard.